James A. POTTER, Appellant,

v.

Frank A. REINHART, Appellee.

No. 3754.

Court of Civil Appeals of Texas.

Waco.

June 16, 1960.

Rehearing Denied July 7, 1960.

---

Law Offices of Ralph B. Lee, Fred F. Abbey, Heflin, Kirk, Van Kuren, & Baggett, Houston, for appellant.

Morris, Termini, Harris, McCanne & Lacas, Houston, for appellee.

TIREY, Justice.

This action is one to recover the unpaid balance of the purchase price of improved real estate which plaintiff sold and conveyed to defendants and to establish judicially and foreclose an equitable or implied vendor's lien against the property, subject to the prior rights and liens held by the loan company. At the conclusion of the testimony the Court granted plaintiff's motion to withdraw the cause from the jury and entered a judgment thereon without prejudice to the defendants' rights to claim that they are entitled to judgment in the cause as a matter of law. There was no request for findings of fact and conclusions of law and none were filed; however, the Court made certain fact findings in the judgment to the effect that defendant, James A. Potter, is personally indebted to the plaintiff in the amount of $10,031.07, for the unpaid balance of the purchase price of the real property described in the pleadings which property plaintiff had conveyed to defendants by deed dated the 14th day of September, 1956, and further found that plaintiff had an equitable or implied vendor's lien against the property to secure plaintiff in the payment of said debt, but that said lien was secondary and inferior to the superior title and lien held by Gibraltar Savings & Loan Association to secure the payment of a certain note in the principal sum of $34,000 dated the 14th day of September, 1956, which note was executed by defendants and payable to the order of said association, and further found that such note represented the monies advanced and paid to plaintiff by the said association as part of the purchase price of the property. The judgment then decreed that plaintiff recover from the defendant, James Addison Potter the sum of $10,031.07, together with interest at 6% per annum from the date of judgment until paid and costs of suit. It further found that plaintiff is entitled to foreclosure of such lien against defendant Potter and his wife, Margaret Hansell Potter, and further provided that the sale of the property under execution in satisfaction of the judgment would be subject to the superior title and lien held by Gibraltar Savings & Loan Association to secure it in the payment of its

debt in the sum of $34,000 heretofore mentioned. Defendants seasonably filed their motion for new trial and it being overruled perfected their appeal to the Houston Court and the cause is here on transfer.

The judgment is assailed on two Points. They are to the effect that the Court erred:

(1) Because the evidence raises a fact issue, it was error for the trial court to take the case from the jury on Plaintiff's motion and render judgment.

(2) The trial court erred in overruling Defendant's Plea in Abatement.

A statement is necessary. On the 25th day of June, 1956, plaintiff and defendants entered into a contract whereby plaintiff agreed to sell and defendants agreed to buy Lot No. 42, Block No. 1, in Riverbend Addition in Harris County, Texas, said addition being adjacent to the City of Houston, which was designated as No. 5, River Circle. This contract, among other things, provides:

"The purchase price is $ see below, payable as follows: $12,000.00 cash (of which Purchaser has deposited with the undersigned Seller $2,000.00 as part payment) receipt of which is hereby acknowledged by said Seller; and $10,000.00 on or before July 7, 1956. It is understood that the amount of this contract is to be sellers cost plus $5,000.00 a-fixed-fee. The Purchaser is to secure the largest first lien obtainable and pay the balance in cash. The said executed note is to be secured by Vendor's Lien and Deed of Trust with power of sale and with the usual covenants as to taxes, insurance and default."
* * *

The record is without dispute that in the month of June, 1956, appellee was engaged in building a house for speculative sale on the property above mentioned, and during that month appellants, who were looking for a house, came to see this property and after some negotiations decided to buy it, and the contract heretofore referred to was executed by plaintiff and defendants, which bound plaintiff to finish the house and sell it to the defendants for plaintiff's costs plus a-fixed-fee of $5,000. The house as originally planned by plaintiff was to have four bedrooms, 3 baths, a two-car garage, and no swimming pool; however, after the construction commenced, defendants requested several changes which plaintiff made for them, one being the construction of a swimming pool, and addition of another bedroom and bath and a carport, and a work shop and an office behind the carport, and further adding built-in furniture and a desk, and changing of walls. After the house had been substantially but not fully completed, defendants requested plaintiff to let them move into the house so they could give up the two apartments they were renting for their family and put their children in the school in that district. Plaintiff consented to this arrangement with the understanding that defendants would close their loan with the loan company, the proceeds of which were to be used as part payment of the purchase price and to pay the balance of plaintiff's construction cost, and the $5,000 fee at a later date as plaintiff determined such cost. Pursuant to this understanding, on September 14, 1956, the sale and the loan was closed at the office of the loan company and plaintiff conveyed the property to the defendants by deed and at the same time the loan agreement of $34,000 was completed with the loan company, and the $34,000 was paid to the plaintiff which, together with the sum of $12,000 previously paid, made a total payment of $46,000 on the house. Thereafter, on September 25, 1956, some eleven days after the deed was delivered to the defendants, the defendants paid plaintiff an additional $5,000, and some time thereafter paid an additional $1,000, which was the last payment defendants made on the house. There was no dispute between the parties at the time such payments were made. It is without dispute that at the time of the delivery of the deed and

the closing of the loan, that both the plaintiff and defendant, Potter, told the witness, Lacklin, the loan company officer who closed the transaction, that defendant still owed plaintiff more money on the purchase price. After the $1,000 payment was made, plaintiff asked defendants for an additional payment, and defendant asked him: "How much is this thing going to cost?" and he asked to inspect plaintiff's bill. Plaintiff agreed to let defendant, Potter, go over the bills, and defendant spent one day with plaintiff in his office and went over the bills, after which defendant told plaintiff: "It looks all right", and he agreed to pay plaintiff, but never did. Plaintiff tendered in evidence Exhibit 3, which shows 227 cancelled checks, showing payment made by him for labor and material used in the construction. Plaintiff also introduced in evidence some 253 paid invoices for labor and material going into the work, and likewise, introduced in evidence his record of the cost of construction, showing the full costs to plaintiff of the house and lot. Plaintiff's testimony and exhibits show the actual cost of the house and lot to be in excess of $58,000, but the Court, after hearing oral argument from attorneys on both sides, allowed plaintiff only $57,031.07 as the cost of the lot and for the construction, and he added to this sum $5,000 as plaintiff's fee, which fee was agreed upon, and this brought the total purchase price up to $62,031.07. The record being without dispute that defendants had paid plaintiff the sum of $52,000, the Court gave plaintiff judgment for $10,031.07.

Defendants went to trial on their first amended original answer. There is no plea of payment contained in this answer. They do have a general denial, and in their prayer they prayed that plaintiff take nothing against them, and for their costs and for general relief.

As we understand the record when both plaintiff and defendants rested, defendants contended that they were entitled to judgment, but the record does not show that they filed such motion for judgment. When the Court announced that it would grant plaintiff's motion to withdraw the cause from the jury and render judgment, defendants did not present to the Court any requested issues of fact to be submitted to the jury, and as we understand the record, contended only to the Court that they were entitled to judgment as a matter of law.

■ Going back to Defendants' Point One, does the evidence raise a fact issue to be submitted to the jury? We think the answer is "No." First of all, since plaintiff and defendants entered into the contract, their rights were fixed by the terms of the contract as to how much the defendants would be obligated to pay for the construction and completion of the house. Defendants did not plead payment, nor any other affirmative defense. Rule 94 of Texas Rules of Civil Procedure specifically sets out that payment is an affirmative defense. So, here we have a situation where defendants plead only a general denial, and did not plead payment or any other defense to plaintiff's cause of action. Payment is an affirmative defense which must be determined upon the merits. See Southwestern Investment Co. v. Allen, Tex., 328 S.W.2d 866, Point 1. The original sales agreement between plaintiff and defendants definitely fixed the rights of the parties as to how much the defendants would be obligated to plaintiff when the house was completed. This record is without dispute that plaintiff completed his contract, and the record wholly fails to show payment or fraud or any other affirmative defense on behalf of defendants against plaintiff's claim. Under the foregoing situation, and under the testimony tendered, there was no issue to submit to the jury, because under plaintiff's testimony and Exhibits, the amount of defendants' debt to plaintiff was without dispute. Rule 279, T.R.C.P., among other things, provides:

"A party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an

affirmative written pleading on his part."

Since defendants did not plead payment they were not entitled to a submission of the plea of payment to the jury. Moreover, they did not file any exceptions in this behalf, nor did they prepare, present and file any defensive issues of fact for the Court to submit to the jury. Moreover, the Rule is well settled in Texas that where the facts show a certain sum to be due from one person to another, a release of the entire sum upon payment of a part is without consideration, and the creditor may still sue and recover the residue. See Oviett v. Warner, Tex.Com.App., 288 S.W. 434; Fidelity & Casualty Ins. Co. of New York v. Mountcastle, Tex.Civ.App., 200 S.W. 862, n.w.h.; Woodmen of the World Life Ins. Soc. v. Brown, Tex.Civ.App., 164 S.W.2d 190, n.w.h.; Woodmen of the World Life Ins. Soc. v. Smauley, Tex.Civ.App., 153 S.W.2d 608, n.w.h. We think this record shows without dispute that the defendants, at the time they accepted the deed and closed the loan knew that they were obligated to pay later to plaintiff such additional sums on the purchase price as became due and owing by virtue of the completion of the construction, and the defendants did, thereafter, pay the sum of $6,000, and the witness, Lacklin, who closed the loan for the loan company, testified to the effect that Mr. Reinhart and Mr. Potter both told him that there was still more money to be paid by Mr. Potter to Mr. Reinhart. This testimony is in nowise disputed. Moreover, as we understand this record, plaintiff's testimony, together with the Exhibits tendered in evidence, show fully and accurately his construction costs and the amounts that defendants were obligated to pay for this property and the completion of the buildings thereon. This Court, in Springfield Fire & Marine Ins. Co. v. Wm. Cameron & Co., 96 S.W.2d 788, 790, n.w.h., made this pronouncement of the Rule here applicable:

"We recognize that there is a general rule that testimony of an interested party to a suit, though not contradicted by any other witness does no more than raise an issue for the determination of the jury. Pope v. Beauchamp, 110 Tex. 271, 219 S.W. 447. But there is an apparent exception to this rule where the testimony of the interested witness is not contradicted by any other witnesses, or attendant circumstances, and the same is clear, direct, and positive, and free from contradictions, inconsistencies, and circumstances tending to cast suspicion upon it. In such cases it is held that an instructed verdict may be given on such testimony." Citing many cases.

Our Supreme Court, in Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904, 908, Points 9 and 10, expressly approved the foregoing holding, and in so doing, said:

"The opinion in the case just cited correctly states the law."

Our Supreme Court has not seen fit to change or modify this Rule. We are of the view that the application of the foregoing Rule to the factual situation here requires an affirmance of this cause.

We have carefully considered appellant's Point 2, and find it to be without any merit whatsoever. Under this undisputed record this Point does not present error. It is accordingly overruled.

We think we should say that under Rule 418, T.R.C.P., we have very grave doubts that appellant's Point 1 should have been considered, but never-the-less, we have considered the same very carefully, and as we have heretofore stated, we think it is wholly without merit, and it is overruled.

Accordingly, the judgment of the trial court is affirmed.